UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>$27,800 IN U.S. CURRENCY,<br><br>          Defendant. | Case No.: 17-CV-00533-AJB-KSC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>(Doc. No. 8) |

Presently before the Court is Plaintiff United States of America's ("the Government") motion for default judgment and forfeiture of Defendant $27,800.00 in U.S. Currency ("Defendant Currency"). (Doc. No. 8-1.) None of the potential claimants, including Georgina Gonzalez ("Gonzalez"), have opposed this motion. Having reviewed the parties' arguments and controlling legal authority, and pursuant to Civil Local Rule 7.1.d.1, the Court finds the matter suitable for decision on the papers and without oral argument. Accordingly, the motion hearing set for January 25, 2018, is **VACATED**. For the reasons set forth below, the Court **GRANTS** the Government's motion for default judgment.

## BACKGROUND

On September 1, 2016, at the San Diego International Airport ("SDIA"), members of the San Diego Integrated Narcotics Task Force ("NTF") Commercial Interdiction Unit were on duty, seeking to intercept and seize controlled substances and proceeds from the sales of controlled substances passing though the airport. (Doc. No. 1 ¶ 3.) The NTF and Drug Enforcement Administration ("DEA") agents have specialized training and are experienced in investigating illegal drug and drug currency couriers. (*Id.* ¶ 4.)

On that day, NTF officers and DEA agents assigned to SDIA learned that Gonzalez was traveling from Dallas, Texas to SDIA. (*Id.*) After departing her plane, the NTF and DEA agents approached Gonzalez and identified themselves as law enforcement officers and asked Gonzalez if they could speak to her and inquire about her travels. (*Id.* ¶¶ 5, 6A.) Gonzalez accordingly cooperated. (*Id.* ¶ 6B.) The agents then proceeded to ask Gonzalez how much money she was carrying with her and Gonzalez repeatedly responded that she was uncertain about the amount, because the total amount represented the money she withdrew from her Bank of America account over a long period of time. (*Id.* ¶¶ 8, 15C.)

The agents then requested that Gonzalez accompany them to the nearby SDIA NTF office. (*Id.* ¶ 12B.) Gonzalez complied, but told the agents that she was being picked up at SDIA by her uncle. (*Id.* ¶ 13.) The agents suggested Gonzalez telephone her uncle and tell him she would be delayed a bit. (*Id.* ¶ 13A.) As Gonzalez walked to the SDIA NTF office, she made a call with her cellular telephone and was overheard telling the person to whom she was speaking that she was being detained for contraband. (*Id.* ¶ 13D.) While Gonzalez pulled the phone away from her ear, revealing the screen on the phone, the agents observed the name "Kyle" on Gonzalez's cellular telephone screen. (*Id.* ¶ 13F.) The agents knew "Kyle" was not Gonzalez's uncle, but was actually her boyfriend or husband who was a suspect in one or more drug-trafficking investigations. (*Id.* ¶ 13G.)

While in the NTF office, two agents received permission from Gonzalez to search her various bags. (*Id.* ¶ 16.) The agents ultimately discovered that she was transporting six bundles of U.S. currency with a total value of $27,800.00. (*Id.* ¶¶ 19, 20.) The $27,800 in

cash was made up of approximately 1,300 bills, with the vast majority of the bills in the $20.00 denomination.[1] (*Id.* ¶ 22.) That same day, at the SDIA NTF office, San Diego Harbor Police Department ("SDHPD") Officer Arce and his trained and certified narcotic detection dog conducted an examination of the $27,800, and the canine alerted to the presence of the scent of one or more controlled substances emanating from the cash. (*Id.* ¶ 23.)

On March 16, 2017, the Government initiated this *in rem* forfeiture action by filing a complaint against Defendant Currency, alleging forfeiture pursuant to Title 28, United States Code, Section 1355(a) and Title 21, United States Code, Section 881(a)(6) for money furnished in exchange for controlled substances. (*Id.* ¶ 1.) On March 22, 2017, Notice of Judicial Forfeiture Proceedings and a copy of the Complaint for Forfeiture were sent by Federal Express to the potential claimant, Gonzalez, at her addresses of record. (Doc. No. 8-1 at 2.)

Shortly thereafter, notice of this civil forfeiture action was also posted on an official Government internet website, www.forfeiture.gov, for at least 30 consecutive days, beginning on March 24, 2017. (*Id.*) From the time of the notice, no claim or answer was filed regarding Defendant Currency by anyone. (*Id.*) On June 27, 2017, the United States Marshal was appointed custodian of Defendant Currency. (Doc. No. 3.) Thereafter, the Government requested the clerk enter a default judgment on August 30, 2017. (Doc. No. 6.) Default judgment was entered by the clerk on August 31, 2017. (Doc. No. 7.) The Government filed the present motion, its motion for default judgment, on September 12, 2017, for the forfeiture of the interests of Gonzalez and all potential claimants as to Defendant Currency. (Doc. 8-1 at 1.) This motion is unopposed.

///
///

---

[1] The $27,800 in cash is Defendant Currency in this matter.

## LEGAL STANDARD

Rule 55(b)(2) of the Federal Rules of Civil Procedure governs applications to the court for default judgment. *See* Fed. R. Civ. P. 55(b)(2). It states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *Id.* at 55(a). Upon entry of default, the factual allegations in plaintiff's complaint, except those relating to damages, are deemed admitted. *E.g.*, *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.1977)). Where the amount of damages claimed is a liquidated sum or capable of mathematical calculation, the court may enter a default judgment without a hearing. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). Ultimately, entry of default judgment is within the trial court's discretion. *See Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 660 (S.D. Cal. 1997).

## DISCUSSION

In its motion for default judgment, the Government indicates that default judgment is proper because the procedural requirements governing forfeiture and default judgment have been satisfied. (Doc. No. 8-1 at 11–12.) The Court agrees. Furthermore, while the Government does not address the substantive *Eitel* factors in moving the Court to grant default judgment, the Court will engage in such an analysis to ensure that default judgment is both procedurally and substantively appropriate.

### I. The Government Has Fully Complied with Forfeiture Procedures

As a threshold matter, the Court finds that it is clear in this case that the Government has done its due diligence in complying with all required forfeiture procedures.

The Government states that the Defendant Currency is liable to condemnation and to forfeiture to the United States for its use in accordance with 21 U.S.C. § 881. (Doc. No. 1 ¶ 28.) Section 881(b) states that "[a]ny property subject to forfeiture to the United States under this section may be seized by the Attorney General in the manner set forth in section 981(b) of Title 18." 21 U.S.C. § 881(b). Pursuant to 18 U.S.C. § 981(b)(2)(A), a seizure

may be made without a warrant if "a complaint for forfeiture has been filed in the United States district court and the court has issued an arrest warrant *in rem* pursuant to the Supplemental Rules for Certain Admiralty or Maritime Claims." 18 U.S.C. § 981(b)(2)(A).

Supplemental Rule G in turn includes several judicial authorization, process, and notice requirements. Under Supplemental Rule G, the government must file a verified complaint that states the grounds for jurisdiction and venue, describes the property being forfeited with reasonable particularity, identifies the statute under which the forfeiture action is brought, and states sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. Fed. R. Civ. P. Supp. G (2)(a)–(f). The Clerk must then issue a warrant to arrest the property if it is in the government's possession, custody, or control, and process must be executed on the property. *Id.* at (3)(b)–(c). The government is then required to give notice to potential claimants by publication and by sending direct notice of the pending forfeiture action to any person who reasonably appears to be a potential claimant. *Id.* at (4)(a)–(b).

The Court ultimately finds that the Government has satisfied the procedural requirements of 18 U.S.C. § 981(b)(2)(A) and Supplemental Rule G, and has complied with all necessary requirements to bring forth this forfeiture action. First, as required by Supplemental Rule G(2), the Government filed a complaint on March 16, 2017, that states the grounds for jurisdiction and venue, describes the property being forfeited with reasonable particularity, identifies the statute under which the forfeiture action is brought, and includes ample factual detail to support a reasonable belief that the Government will be able to meet its burden of proof at trial. (Doc. No. 1.) Second, in accordance with Supplement Rule G(3), the Clerk issued an arrest warrant *in rem* for Defendant Currency (Doc. No. 4), and on July 6, 2017, process was executed upon Defendant Currency by the U.S. Marshals Service, (Doc. No. 5). Third, pursuant to Supplemental Rule G(4)(a), the Government posted notice of the forfeiture on an official government website, www.forfeiture.gov, for at least 30 consecutive days starting on March 24, 2017. (Doc. No. 8-1 at 2.) Lastly, the Government also sent notice to known potential claimant, Gonzalez,

as mandated by Supplemental Rule G(4)(b). (*Id.*) Specifically, on March 22, 2017, the Government sent Gonzalez a notice of judicial forfeiture proceedings and a copy of the complaint for forfeiture by Federal Express to three different addresses. (*Id.*) Although the notice sent to Gonzalez's Texas address was returned, the two other notices to Gonzalez's California addresses were delivered on March 23, 2017 and March 28, 2017. (*Id.*)

Accordingly, the Government has fully complied with all necessary requirements to proceed with this forfeiture action.

## II. The *Eitel* Factors Favor Granting the Government's Motion for Default Judgment

Although the Government does not address the *Eitel* factors, a balancing of these factors leads the Court to conclude that entry of default judgment is appropriate.

In making the determination of whether to enter default judgment, the Court can consider the following factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

The Court will first address the second and third *Eitel* factors concerning the merits of plaintiff's substantive claim and the sufficiency of the complaint. To prevail in an action under 21 U.S.C. § 881(a)(6), the Government must prove by a preponderance of the evidence that the property was either "(1) furnished or intended to be furnished in exchange for a controlled substance; (2) traceable to such an exchange; or (3) used or intended to be used to facilitate a violation of federal drug laws." *United States v. $191,910 in U.S. Currency*, 16 F.3d 1051, 1071 (9th Cir. 1994), superseded by statute on other grounds by Civil Asset Reform Act of 2000 ("CAFRA"), Pub. L. No. 106–185. When the Government's theory of forfeiture "is that the property was used to commit or facilitate the commission of a criminal offense," or was involved in the commission of a criminal

6

17-CV-00533-AJB-KSC

offense, it must also establish a substantial connection between the property and the offense. *See* 18 U.S.C. § 983(c)(3). The determination of whether the Government has met its burden of proof is based on the aggregate of the facts, including circumstantial evidence. *See United States v. Currency, U.S. $42,500*, 283 F.3d 977, 980 (9th Cir. 2002).

The Court finds that the factual allegations in the complaint, taken in its entirety, satisfies the Government's burden of proof of a substantial connection between Defendant Currency and the offense of money furnished or intended to be furnished in exchange for a controlled substance under 21 U.S.C. § 881(a)(6). First, a trained and certified narcotics-detection canine alerted to the scent of a controlled substance on Defendant Currency at the SDIA. (Doc. No. 1 ¶ 23 (*see Currency, U.S. $42,500*, 283 F.3d at 982–83 (finding that a positive alert by a narcotics detection canine is "an important factor in determining probable cause" and provides evidence of a link between seized money and controlled substances); *see also United States v. $22,474 in U.S. Currency*, 246 F.3d 1212, 1216 (9th Cir. 2001) (explaining that because of more sophisticated training, a narcotics detection canine would not alert to currency unless it had recently been in proximity to cocaine)). Thus, the scent of the controlled substance on Defendant Currency strengthens the connection between the currency and the offense.

Second, Gonzalez was carrying a substantial amount of cash in the amount of $27,800, with the vast majority of the bills in the twenty-dollar denomination. (Doc. No. 1 ¶¶ 21–22.) The amount of cash and the denomination of the bills furthers the inference that the money was drug-related. *See Currency, U.S. $42,500*, 283 F.3d at 981–82 (noting that a large amount of cash is "strong evidence" that the money was furnished or intended to be furnished in return for drugs); *see also United States v. Approximately $17,872 in U.S. Currency*, No. C 08–3346 WHA, 2009 WL 2990496, at *3 (N.D. Cal. Sept. 11, 2009) (stating the use of small denominations contributes to a finding of probable cause that the money is connected to illegal activity).

Third, Gonzalez's vague and ambiguous statements explaining the source of the money and her reasons for carrying it also support an inference that the money was drug-

related. When asked how much cash she was carrying, Gonzalez responded that she "had no idea of the amount" and that she did not know how much money because it represented money she withdrew from her Bank of America account over a long period of time. (Doc. No. 1 ¶¶ 8, 15). In sum, these allegations, viewed in the aggregate, demonstrate by a preponderance of the evidence that Defendant Currency is subject to forfeiture under 21 U.S.C. § 881(a)(6). *See United States v. $215,300 U.S. Currency*, 882 F.2d 417, 419 (9th Cir. 1989) (holding that attempts to avoid detection by concealing or lying about the money supported an inference that the money was drug-related).

The remaining *Eitel* factors also weigh in favor of granting the Government's motion for default judgment. First, as for the "possibility of prejudice to plaintiff" factor, denying the motion would unduly prejudice the Government because it would be required to litigate this action even though no potential claimants have appeared to contest this forfeiture. *See United States v. Approximately $28,000 in U.S. Currency*, No. 09-5377 SC, 2010 WL 1340110, at *4 (N.D. Cal. Apr. 5, 2010) (pointing out prejudice where the government would have to expend further time and effort in an action that has no opposing party). Second, for "the sum of money at stake" factor, the amount of money of $27,800 is not insubstantial. However, the Government has also demonstrated by a preponderance of the evidence that this substantial amount of money was used in connection with illicit controlled substances in violation of federal law. *See id.* (holding that while $28,000 is not insubstantial, it "is not large enough to warrant denial of the motion" for default judgment). Third, concerning "the possibility of a dispute concerning the material facts" factor, there is no possibility of a dispute because no claim or answer has been filed by any potential claimants. Fourth, regarding the factor of whether the default was due to excusable neglect, there is no evidence that default was the result of excusable neglect because no potential claimants have appeared despite the Government fully complying with the notice requirements under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See United States v. Approximately $72,000 in U.S. Currency*, No. C 08-1305 JCS, 2009 WL 506866, at *4 (N.D. Cal. Feb. 27, 2009) ("[T]here is no evidence

that default was due to excusable neglect given that . . . Plaintiff provided adequate service and notice to the parties known to have an interest in the property."). Finally, although the Court should decide cases on the merits, the failure of Gonzalez or any other potential claimant to file an answer "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Consequently, because the Government has complied with the necessary procedural requirements applicable to forfeiture proceedings, and because the *Eitel* factors weigh in favor of default judgment, default judgment and forfeiture of Defendant Currency is appropriate.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Government's motion for default judgment. Defendant $27,800 in United States Currency is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6). All right, title, and interest in Defendant Currency is vested in the United States of America.

**IT IS SO ORDERED**.

Dated: December 8, 2017

Hon. Anthony J. Battaglia
United States District Judge